Wilfredo Urbina v. City Of New York Good morning, may it please the court. My name is James Meyerson, along with Jenny Poupey-Mirashi. We represent the appellant, Wilfredo Urbina. The issue before this court on this matter is very narrow. It's whether the court below Judge Crotty presiding committed reversible error when on the complaint he dismissed it and concluded that Urbina had failed to plead sufficiently adequate, specific, and particular factual conduct to state a facially plausible claim under the seizure concept of the Fourth Amendment. The actions that took place, Urbina and his friends, Scott Lisby and Torres, arrived in a neighborhood at 3 o'clock in the morning to visit a friend, Tejada. They exited their vehicle. There was little traffic, pedestrian or vehicular, on the street. They were confronted by a neighborhood group that spewed racial epithet and threatened them physically. The police came on the scene. As that was occurring, the group of assailants left in a particular area, all of which has been pled, observed that. Urbina, Scott, and went up to the apartment to enter into it. They entered into it. As they entered into it, police who had entered into Tejada's residence, albeit pled unlawfully, we say, told Scott, Torres, to leave, as well Urbina, escorted them out and arrested Torres and seized his vehicle, he being the designated driver, Torres. They let Tejada and Lisby return to Tejada's apartment. They directed Scott and Urbina to leave the neighborhood entirely. As they went to leave the neighborhood in compliance with the authority, albeit an unlawful authority, we allege, the police told Urbina to go in another direction, the direction which they knew the gang that had assaulted them had departed. This seems to me to be a very average interaction. Don't you think that we'd have a lot of constitutional claims if everybody who was told by a policeman to move on or get out of here, that this is a constitutional violation or a violation of the right to travel. That's a little. Well, actually, it's more, Judge Cabreras, it's more fundamentally the right to choose the location to be where you want to be. It's sort of like a Terry versus Ohio situation. When you're walking down the street, as the Supreme Court says, you have a right to walk down the street unless there's an objectively reasonable, fact-supported law enforcement justification to stop the individual. The same is true in this context. Any one of us, going to visit a friend, we are invited to that residence. We go up to the residence. There was a police officer there that tells us to leave. Has to have some objectively reasonable law enforcement justification to do that. As the court said in Terry. And what's wrong with the justification here? We don't have a justification yet. We're at a pleading stage. Let me go back to the issue. It's a very narrow issue. Have we pled sufficiently adequate factual conduct that suggests that there has been an interference with, an obstruction, a hindrance with the right of one's freedom to choose where to be. At this point, that's all that we have. We have the pleading. No discovery. No justification yet developed or asserted in a record. This is a very narrow issue. It's sort of like Solomon. At what point, at precisely what point did the constitutional violation occur? Well, we argue that each step individually or each individually collectively described a seizure. Now. I don't understand that concept. When they were excluded from the apartment to which they had a right to go without any objective law enforcement justification for such, that itself was a seizure. When they were escorted out of the building, that itself was a seizure. When they got on the street, rather than being provided the opportunity to go back to the apartment and directed to leave, and to leave in a particular direction other than the one that they had chosen to leave, those actions of authority of law were seizures. Now, one might argue that one aspect wasn't in and of itself a seizure, but then the collective nature of the conduct was a cumulative seizure. The theory being that once the officers went in the apartment and told them to leave, they were not free to leave? They were being compelled to leave. They had chosen, they have a right, a freedom to choose where they want to be. All of us have that right. Unless there's an objective basis for the law enforcement officer to say you can't be there. So once an officer asserts authority of law, coercive, you have to leave, that interferes, that hinders, that obstructs the freedom to choose where you as a citizen want to be. Now, in Terry v. Ohio, and I think this is a very important thing to remember, the court, the United States Supreme Court said no right is held more sacred or more carefully guarded by the common law, and then before and within the Constitution, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. At the point in time when Urbina, as an invited guest, went into the apartment, he had a right to do that. He was invited. He had been there many other times. That was his friend's apartment. And they, the police, at least as pled at this point in time, had no right to exclude him and or to take him out of the apartment and or then to banish him from the neighborhood and to do so in a direction that he didn't choose of his own accord to leave. The concomitant and corollary of a right to leave and go is a right to stay and be. He had a right to be in that apartment. He had a right to be in that neighborhood. They had no right, unless there was an objective law enforcement factually-based justification, to tell him, get out of here. No. Police officers in this country don't have unfettered power and authority to tell someone to leave. And at this stage of the proceedings, we simply say this court should reverse, send it back to Judge Cronin and say, let the record be developed. Perhaps at summary judgment that justification will be established. We reserve two minutes. Thank you, Mr. Morrison. May it please the court, Kathy Park for the city defendants. The dismissal of plaintiff's claims should be affirmed on several independent grounds. He has not made a showing of causation. He has not plausibly alleged a constitutional violation. And he has not alleged the type of pattern of similar constitutional violations that would be necessary for him to succeed on his theory of liability. You heard opposing counsel allege that he had a right to be let alone and not interfered with. Isn't that part of the penumbra of rights that individuals have just walking on the street? It's not. And I'll explain why I'm going through each of the constitutional provisions that the plaintiff relies upon. It's not a seizure of a Fourth Amendment right. This court in Sheppard v. Beerman has already held that there's no unlawful seizure of a person when they're prevented from being inside a courthouse and that they're escorted out, as long as they are otherwise free to go wherever they wish. And here, Urbina admits that as he walked away from Tejada's apartment, he felt free to go to a store. He felt free, perhaps in short order, to return back to his home. Why were the police officers authorized to go into this private dwelling and tell someone to leave? Your Honor, on the allegations of this complaint, well, first, they were in the private location. First, let me take a step back. Plaintiff here was never in a private location. He was never in the apartment. The police were in the private location to conduct a search and arrest certain other plaintiffs who have now settled their claims and are not- It's the basis of the arrest. Does the record reflect that? No, Your Honor. There's nothing alleged in the complaint about why the police arrested those individuals. It just says that there was a search. But in any event, when we're just looking at Urbina here, who was not arrested, he simply hasn't alleged the seizure of his person because there is no constitutional violation simply barring entry into a private location or telling them to go in one direction or not. We might have a different case if the police perhaps had used force or restrained Urbina in issuing those directions or if Urbina had disobeyed those directions and the police had then arrested him. But simply on the facts alleged here, where the police simply told him to go in one direction, where he then followed through with that direction and also admits that he had- he believed himself free to return back to that location in short order. He simply hasn't alleged factual matter that would amount to a seizure of a person under the Fourth Amendment under this court's jurisprudence, nor has he alleged a constitutional- an infringement of his right to travel. On that claim, this court has already held that the constitutional right to interstate travel protects movement between places. It's not about access to a particular place. As this court noted in Williams v. Greenberg, there's no substantive right to cross a particular parcel of land or to enter a chosen dwelling. So to the extent that Urbina is claiming any constitutional- But what about to walk down a particular public street? At most, this court has held that negligible restrictions on freedom of movement does not amount to a constitutional violation. Here at most, that was just a minimal, temporary limitation on his freedom of movement, where he admits in his own allegations that he felt free to return to that location in short order, that he did not feel himself banished from that area, and where this court has noted that the constitutional right to interstate travel doesn't mean that you're entitled to the most convenient form of travel or the most direct route. As for his failure to protect claim under the Due Process Clause, even if under the facts alleged here there was any opportunity for the police to have intervened or had any knowledge of any suspicious circumstances, the Due Process Clause doesn't impose any affirmative duty on the police to intervene in these types of situations. And the two narrow exceptions to this rule don't apply here. He hasn't alleged that he was in involuntary custody of the police to invoke the special relationship exception, nor has he shown that any governmental actors here actually affirmatively assisted in creating or increasing the danger to the victim through any kind of interaction with the wrongdoers to invoke the state-created danger exception. And even if either of these exceptions applied, he has then not shown that the police conduct at issue was so egregious or so outrageous to shock the conscience, which he would need to plead in order to avail himself of either exception. At minimum, qualified immunity would protect or insulate the officer's actions here. Even if this court, or setting aside whether he has plausibly alleged a constitutional violation, Urbina has not pointed to any remotely analogous case that would have put any of the officers on notice here that simply directing plaintiffs to walk one direction instead of the other direction after an arrest at 3 a.m. at night or barring entry to a private dwelling that did not belong to any of the plaintiffs, or to Urbina, who was the only plaintiff appealing his claims, that that would have amounted to any constitutional violation. I'd like to just briefly touch on the Minnell claim for the same reasons that he has not alleged a constitutional violation or adequately alleged proximate causation. On those grounds, his Minnell claim also fails. But even setting that aside, the theory of Minnell liability that Urbina asserts would require more than a single alleged incident. He would have to show, beyond his own alleged experience, that there was a pattern of similar violations, similar constitutional violations. He would need to plead that in order to support his Minnell claim. And because he only cites his own alleged experience here, he has fallen short of the showing that is necessary to support his claim of municipal liability. Thank you, Your Honor. Go ahead, Mr. Myerson. Let me just make clear that this is a Fourth Amendment claim. Alternatively, a substantive due process Fourteenth Amendment claim was pled. But as Laurel points out, where the textual source is the Fourth Amendment, that's how this case should be analyzed. And that was one of the problems with Judge Crotty, his analysis. He never made that fundamental initial determination, and therefore mixed and matched and confused elements that might have been relevant to the Fourteenth Amendment claim into the Fourth Amendment claim. He gave you an opportunity to amend your complaint, didn't he? I'm sorry? He gave you an opportunity to amend the complaint? He gave us an opportunity to amend the complaint to add certain other Fourth Amendment claims. The initially pled complaint had a Fourth Amendment claim based on seizure. We had the opportunity and then elected not to, to amend on a search and an excessive force claim. We didn't do that. But initially, the initial complaint as pled, pled primarily a Fourth Amendment claim, and then alternatively, if it wasn't a Fourth Amendment claim, a substantive due process claim. As we argued in the court below, we said to Judge Crotty, the first thing you have to do is determine which claim, what amendment controls. If he had said it was the Fourth Amendment, he would have never had to analyze anything under the Fourteenth Amendment. And when he didn't make that initial determination, such caused, if you will, some confusion in how he analyzed the Fourth Amendment claim. Let me just say about qualified immunity, that was never addressed by the court below. And under this court's precedent, this court should, if it elects to reverse, not address qualified immunity, but give him the opportunity to do so. Last week, a decision came down, Judge Pooler, in which you sat in the Mitchell case where you precisely said, we're not going to rule on the qualified immunity when we reverse and send it back to the district court, because the district court never addressed that issue. And thanks very much, Mr. Myers. We'll reserve this session.